IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| YIN WEN CHEN, | * | |
| **Plaintiff,** | * | |
| v. | | Civil Action No. SAG-17-2087 |
| | * | |
| ROYAL GARDEN ADULT | * | |
| MEDICAL DAYCARE CENTER, | | |
| INC., et al. | * | |
| **Defendants.** | * | |

\* \* \* \* \* \*

## DEFENDANTS' MEMORANDUM IN SUPPORT
## OF MOTION FOR SUMMARY JUDGMENT

COMES NOW the Defendants Royal Garden Adult Daycare Center, et al. (the "Center"), by counsel and pursuant to Fed. R. Civ. Proc. Rule 56 and Local Rule 105, and hereby moves this Honorable Court to grant the Center's Motion for Summary Judgment in the above-referenced action. The facts of this case, even when considered in the light most favorable to Plaintiff Yin Wen Chen ("Mr. Chen"), cannot establish a cause of action upon which relief can be granted.

## I.      Introduction

The United States Supreme Court has held that, "a party who bears the burden of proof on a particular claim must factually support each element of his or her claim and a complete failure of proof concerning an essential element... necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323 (1986). The Fourth Circuit Court of Appeals has further held that, "a mere scintilla of evidence in support of the non-movement's position will not defeat a Motion for Summary Judgment."   *Thompson v. Potomac Elec. Power Co.,* 312 F.3d 645, 649 (4th Cir. 2002). Finally, the United States Supreme Court has held that an employee

1

must prove as a matter of just and reasonable inference that he or she worked in excess of forty (40) hours under the Fair Labor Standards Act. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946), *see also*, *Donovan v. Bel-Loc Diner, Inc.,* 780 F.2d 1113, 1116 (4th Cir. 1985).

Mr. Chen claims he is owed compensation for overtime he worked from March 2015 to July 2016. *ECF No.* 3-1¶¶ 35-37.[1] However, he has no evidence that he actually worked beyond forty (40) hours a week for any given week other than his own testimony, which is speculative, at best. Further, Mr. Chen's timesheets do not show that he worked in excess of forty (40) hours a week at any time during his employment with the Center. Thus, his testimony contradicts the documents in this case. Federal District Courts have granted summary judgment and held this amounts only to a scintilla of evidence.[2] Further, under the Fair Labor Standards Act, in addition to proof that he worked in excess of forty (40) hours, Mr. Chen is also required to prove that the Center had knowledge of his working overtime hours. As set forth below, Mr. Chen can offer no evidence supporting his claim for unpaid overtime, and he cannot establish that the Center was aware that he worked any of the alleged overtime.

## II. Statement of Facts

Royal Garden Adult Daycare Center (the "Center") is a 190 participant-licensed adult daycare facility designed to provide a safe and friendly atmosphere for senior citizens of Chinese

---

[1] Plaintiff alleges that Defendants violated the Fair Labor Standards Act ("FLSA") of 1938, as amended, 29 U.S.C. §§ 201 *et seq.*; the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401 *et seq.*; and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501 *et seq. ECF No.* 3-1. Because the provisions of the MWHL closely track those of the FLSA, an employee's MWHL claim will "stand[] or fall[] on the success of [his] claim under the FLSA." *Rollins v. Rollins Trucking, LLC*, 2016 U.S. Dist. LEXIS 1492, at *5 (D. Md. Jan. 7, 2016).

[2] *White v. Wash. Gas*, 2005 U.S. Dist. LEXIS 3461, at *13-14 (D. Md. Mar. 4, 2005)(Finding that the only evidence to support plaintiff's contention that he worked overtime hours was his affidavit, which was contradicted by his timesheets and that this amounts only to a "scintilla of evidence," so summary judgment is appropriate).

descent.[3] See, http://www.royalgardenamdc.com/. The Center's goal is to prevent hospitalization and nursing home placement by enabling participants to maintain meaningful lives in their own homes. *Id.*

Mr. Chen began working at the Center on March 9, 2015 as a driver/server. Exhibit ("Exh.") 1-Chen Transcript ("Tr.") p. 7, Exh. 2-Chen's Hiring Letter. In his position, Mr. Chen's primary duty was to transport customers to and from the Center. Exh. 1 p. 7.  On July 15, 2015, Mr. Chen was placed in the position of food services at the Center. Exh. 3-Food Service Position. He then worked at the Center until July 16, 2016, when he was discharged for coming to work under the influence of alcohol and starting a fire in the kitchen. Exh. 4-Bryan Hong Tr. p. 16-18.

When Mr. Chen was first hired as a driver-server, he earned an annual salary of $35,000, which was paid to him on a bi-weekly basis. Exh. 2. While Mr. Chen was working as a driver, Steven Yang ("Mr. Yang"), the President of the Center, once asked Mr. Chen and the other drivers to work overtime transporting customers to a Cherry Blossom Festival.  Exh. 1 p. 38. Mr. Chen testified that he agreed to work overtime at Mr. Yang's request and was paid for working overtime as a driver.  *Id.* This was the only time that Mr. Chen worked overtime for the Center.

Four months after he was hired, Mr. Chen was transferred to a food service position in July 2015. At that time, Mr. Chen's annual salary increased to $40,599.96 per year. Exh. 3. After his transfer, his hours of work remained the same, which was from approximately 7:20 a.m. to 2:30 p.m., Monday through Saturday. Exh. 5- Steven Yang Tr. p. 41.

As part of Mr. Chen' job duties at the Center, he was required to enter his time and attendance into a computerized facial recognition system (the "FRS") every day. Exh. 1 p. 26-28. To activate the FRS, Mr. Chen would look into the computer when he entered the Center in the

---

[3] Due to the customers served by the Center, Mandarin Chinese is the primary language spoken at the Center. Exh. 4 p. 23-24.

morning and when he left at the end of the day. *Id.* After he recorded his hours in the FRS, Mr.

Chen would leave the Center immediately and did not do any additional work for the day. *Id.* p.

40. The computer would then record Mr. Chen's time based on his face and, later, a paper record

of his time was created for payment of his wages. *Id.* p. Mr. Chen testified that he did not notice

any errors in his timesheets from the FRS. *Id.* p. 28, 37.

In his Amended Complaint, Mr. Chen alleges that he worked an estimated forty-four (44)

hours of overtime each week from March 17, 2015 until approximately May 31, 2015. *ECF No.*

¶35. Thereafter, his Amended Complainant claims that he worked approximately twenty-two

hours of overtime each week from approximately June 1, 2015 until June 29, 2016. *Id.* ¶¶ 36-37.

Added together, this amount to approximately 2,500 of overtime.

At his deposition, however, Mr. Chen testified that he did not work overtime when he

was employed as a driver for the Center. Exh.1 p. 28-29.  He also testified that he worked ten

(10) days of overtime total once he started in food services making fritters and about three other

days doing other types of work for the Center:

> Q.     Ten days during the entire year that you were a cook, you made fritters. Is that
>        your testimony?
> A.     Approximately, yes.
> Q.     And each time you allege you had to work overtime?
> A.     Correct. The first time when I started making fritters, I was not familiar with
>        that, and I stayed overnight the whole night there working on it.[4] *Id.* p. 62.

Although Mr. Chen claimed to have worked overtime on a regular basis for the Center,

he testified that his management did not ask him to work overtime or give him permission to do

so:

---

[4] Mr. Chen claimed that he was making fritters, a type of fried dough, for the Center when he
worked these ten days of overtime. Exh. 1 p. 62.  However, the Center did not have the proper
equipment to fry food until a few days before Mr. Chen was discharged in July 2016. Even for
those few days, Mr. Chen did not fry fritters because he started a fire in the kitchen and was
discharged. Exh. 4 p.  14, 16-18.

Q.      Did any person at Royal Garden say to you, "Mr. Chen, I want you to work
        overtime?"
A.      No one has said for me to work overtime, but just ask me to finish up the work I
        was doing. But in order to finish that work, I have to do it after work.
Q.      ... Did anyone say to you, "I want you to finish work after your normal working
        hours?"
A.      No. No one has said that I have to finish this or that, but the work, in order to
        finish, it has to be without the elderlies being there; therefore, after work.
Q.       . . .  Are the elderlies the customers?
A.      Correct.
                                    *****
Q.      . . . Did Mr. Yang ever say to you, "I want you to do this work after the elderlies
        leave?"
A.      No.
Q.      Did Mr. Hong ever say to you, I want you to do specific work after the elderlies
        leave?
A.      No.
Q.      Did any of your supervisors ever say to you, I want you to do specific duties after
        the elderlies leave?

  A.     No. Exh. 1 p. 18-20.

Additionally, Mr. Chen testified that the Center's management did not approve his

overtime and he did not tell them that he had worked overtime:

Q.      Who gave you permission to do that?
A.      They did not force me. The leaders had never forced me. But if I did not have the
        fritters well done, I have to have it done properly.
Q.      Did Mr. Hong ask you to stay overnight completing these fritters?
A.      Nobody has asked me to stay overnight, but because I was given this task, I want
        to do it well. *Id.* p. 62-63.
                                    ****

Q.      Did you ever tell Mr. Hong that you stayed overnight at Royal Garden preparing
        fritters?
A.      No.
Q.      Did you tell Mr. Yang that you stayed overnight at Royal Garden preparing
        fritters?
A.      No.
Q.      Did you tell any supervisor at Royal Garden that you stayed overnight preparing
        fritters?
A.      No. *Id.* p. 65.

Finally, Mr. Chen testified that he did not ask the Center's management to give him any

compensation for the time that he allegedly worked overtime for the Center:

5

Q.      Were you paid overtime for it?
A.      No.
Q.      Did you ask Mr. Hong, "Listen, I was here all night. Where is my overtime?"
A.      No. *Id.* 63.

****

Q.      Did you request overtime pay for the time that President Yang allegedly saw you
        after 9:00 in the facility?
A.      No.
Q.      So, you got your check and just said, "Oh, well, no overtime pay for me?"
A.       I never said it before. *Id.* p. 68-69.

According to Mr. Chen, three of his former co-workers at the Center named Chen

Jimfeng, Dong Ixaofeng, Xu Kangmei were aware that he had worked overtime for the Center.

Exh. 1 p. 90-91. However, he testified that these co-workers only knew that he was still at the

Center after they had left the Center for the day and did not actually see him working overtime:

Q.      Do you claim that Chen Jimfeng is a witness to you working overtime?

****

A.      Not that Ms. Feng knows how late I work, because she saw me. When they were
        leaving for home, I was still there working. *How long I worked, they don't know*.

****

Q.      And what about Dong Ixaofeng? Do you allege that he knows anything about you
        working overtime?
A.      He was once an employee of the center.
Q.      Does he know anything about you, Mr. Chen, working overtime?
A.      He's the same way that he's leaving for home and I'm still there working.
Q.      But he doesn't know how long you were there. Correct?
A.      *No one knows because they've gone home*.
Q.      What about Xu Kangmei? Does Xu Kangmei know anything about you
        working overtime?
A.      When they were leaving, I was there still working. *Id.* p. 90-91 (emphasis added).

Mr. Chen also claimed that Mr. Yang, the President of the Center, Bryan Hong ("Mr.

Hong") the Center's Director and his former supervisor Wang Xu Hui saw him working

overtime for the Center. *Id*. p 68-70.  However, all three testified that they did not see Mr. Chen

working at the Center after his normal working hours:

By Mr. Yang:

Q.      Was there ever a time when you saw Mr. Chen working past 2:30 p.m.?

       A.      No. Exh. 5 p. 41.

By Mr. Hong:

       Q.      Do you recall situations that Mr. Chen worked past 2:30 p.m.?
       A.      No.
       Q.      Did you have a conversation with Mr. Chen regarding overtime?
       A.      No. He never mentioned it to me. Exh. 4 p. 12.

See also, Exh. 6-Affidavit of Mr. Wang at ¶¶ 4, 12 stating he did not see Mr. Chen working overtime for the Center.

Moreover, Mr. Chen's time sheets generated from the FRS do not reflect the amount of overtime hours that he claimed. Mr. Chen's timesheets show that during his employment with the Center from March 17, 2015 to June 19, 2016, Mr. Chen worked an average of 6.35 hours per day six days a week  for a total of thirty-eight point one (38.1) hours a week. Exh. 7-Chen's Timesheets. This is less than forty (40) hours per week. Mr. Chen admits that his timesheets were accurate during his employment with the Center. Exh. 1 p. 54-55.  Additionally, he claimed that his timesheets should have reflected the times that he allegedly worked overtime for the Center until 10:00 p.m. because he checked out in the FRS. *Id.* p. 70. However, the timesheets do not indicate that Mr. Chen ever worked overtime or checked out in the FRS after his normal working hours. Exh. 7.

The Center has a written policy in the Employee Handbook that was explained to Mr. Chen during orientation in Mandarin. Exh. 8-Employee Handbook p. 12-13, 14, Exh. 9-Affidavit Zhao Ping Lum ¶4-8 and Exh. 4 p. 23-24. The overtime policy states that no employees are permitted to work in excess of forty (40) hours per week without first submitting an application for overtime to the Department Manager or Director <u>and</u> obtaining prior approval "signed by President of [the Center] to be effective." Exh. 8 p.12-13 and Exh. 5 p. 33-34. The overtime policy also states "It is the employee's responsibility to clock in and out properly." *Id.* p. 14.  At

7

the start of his employment, Mr. Chen signed the form acknowledging that he understood the Center's employment. Exh. 1 p. 15-16, Exh. 8 p. 5.

Despite this policy, Mr. Chen admits he did not seek approval to work overtime. Exh. 1 p. 62-63. Mr. Chen also admits that the Center's President, Director or his supervisor never asked him to work overtime. *Id.* p. 62-63. Further, at no time during the course of his employment did Mr. Chen ask Mr. Yang or Mr. Hong to be paid for the overtime he allegedly worked. Exh. 1 p. 63, 67-69. Instead, the Center's President, Director and Mr. Chen's supervisor were not aware of Mr. Chen alleged overtime. Exh. 5 p. 41, 60, Exh. 4 p. 12, 18 and Exh. 6.

Furthermore, Mr. Chen knew that the Center *does* pay overtime to employees, like Dong Ixaofeng, who work overtime with Mr. Yang's permission. Exh. 1 p. 92. When an employee requests to work after hours or on the weekends, Mr. Yang will approve the request it if it is necessary. *Id.* If it is approved the employee will be paid for any hours in excess of forty (40). Exh. 8 p. 12-14. Again, Mr. Chen was admittedly paid for working overtime once with Mr. Yang's approval when he drove to the Cherry Blossom Festival. Exh. 1 p. 38.

Similarly, the Center has procedures in place for employees to report issues with their wages, i.e., not being paid properly. Specifically, they are told to contact their supervisor, the Center Director or President if there are problems with their wages. Exh. 5 p. 54-55. The matter will then be investigated and wages will be increased if it is determined the amount paid is incorrect. Exh. 4 p. 27-28.

After he was discharged, Mr. Chen signed a wage claim form (the "claim") that was filed with the Maryland Wage and Hour Division. Exh. 10-Chen's Wage Claim. His claim was very specific-even to the dollar-and stated he was owed $45,643.71 in overtime wages. *Id.* p. 3. However, Mr. Chen testified that he did not keep records of the alleged overtime hours that he

worked for the Center. Exh. 1 p. 50, 87. He also testified that he did not complete the claim for his overtime wages because he cannot read English so his son completed it. *Id.* p.87-90. Further, he testified that he did not understand parts of the claim, but it was not explained to him. *Id.* p. 90.

Finally, during his deposition, Mr. Chen appeared confused about the meaning of overtime because he testified that tasks (such as handyman jobs) that he performed *during his normal hours* were "overtime" work because he was "devoting time and efforts to the center:"

Q.      Mr. Chen, could you tell me what overtime means to you?
A.       Our work, our boss's rule is 40 hours per week, and we work six days. Every day, we are paid 6.5 hours.
Q.      That's overtime, anything over 40 hours a week; is that your testimony?
A.      *It is not what I said.* Like I said before, the president was saying, whoever devotes more time and efforts for the center, at the end of the year, that person will be rewarded.
Q.      *Okay. When you say time and effort, Mr. Chen, do you mean doing additional duties during your regular working hours*?
A.      *Correct*. Exh. 1 p. 42-43.

Although Mr. Yang and Mr. Hong testified that Mr. Chen did indeed remain at the Center a few days on Thursday doing handyman jobs or changing the water in the Center's fish tank, when the customers went to buffet lunch at a restaurant, those jobs were done during Mr. Chen's normal working hours. Exh. 5 p. 38-41, Exh. 4 p. 30. Therefore, this was not overtime work as Mr. Chen claimed.

## III. Discussion

**A.      Employment is defined as "permitted to work" and the Center did not permit Mr. Chen to work overtime during the times alleged.**

The Fourth Circuit Court of Appeals, in *Davis v. Food Lion,* 792 F. 2d 1275 (1986) has held that in order to recover unpaid overtime compensation under the Fair Labor Standards Act, an employee must show that he was "employed" by the defendant. *Id*. at 1276. "Employ" is

defined by 29 U.S.C. §203(g) as "suffer or permit to work." The Court in *Davis* and other

Federal Courts interpret "suffer and "permit" to mean with the knowledge of the employer. *Id.*

Therefore, according to the Court in *Davis,* "in order to prove that he is 'employed' for purposes

of the Act, it is necessary for a plaintiff to show that his employer had knowledge, either actual

or constructive, of his overtime work." *Id.* The Court in Davis went on to state that knowledge

means proof that defendant knew or should have known that the plaintiff was working overtime

for the employer.

        The plaintiff in *Davis* brought an action for unpaid overtime compensation under the Fair

Labor Standards Act arguing that "Food Lion should have known his off-the-clock work because

of the pressure put on market managers by the unrealistically stringent Effective Scheduling

system." *Id.* at 1277. The Court held that the plaintiff did not prove an element of the case

because he did not show that the defendant "knew or should have known that he was working

overtime hours." *Id.* at 1277-1278.  Similarly, Mr. Chen cannot prove that the Center knew or

should have known that he was working overtime. Like the plaintiff in *Davis*, he essentially

claims that his management should have known that he needed extra time to allegedly prepare

fritters for the customers, which he claimed forced him to work overtime. Exh. 1 p. 18-20, 63-65.

But, management did not ask him to work overtime, give him permission to do so or know that

he was allegedly working.

> Q.    Who gave you permission to do that?
> A.    They did not force me. The leaders had never forced me. But if I did not have the
>        fritters well done, I have to have it done properly.
> Q.    Did Mr. Hong ask you to stay overnight completing these fritters?
> A.    Nobody has asked me to stay overnight, but because I was given this task, I want
>        to do it well. *Id*. p. 63.
>                            *****
> Q.    Did you ever tell Mr. Hong that you  stayed overnight at Royal Garden preparing
>        fritters?
> A.    No.

Q.     Did you tell Mr. Yang that you stayed overnight at Royal Garden preparing
       fritters?
A.     No.
Q.     Did you tell any supervisor at Royal Garden that you stayed overnight preparing
       fritters?
A.     No. *Id.* p. 65.

*****

Q.     Did any person at Royal Garden say to you, "Mr. Chen, I want you to work
       overtime?"
A.     No one has said for me to work overtime, but just ask me to finish up the work I
       was doing. But in order to finish that work, I have to do it after work.
Q.     ... Did anyone say to you, "I want you to finish work after your normal working
       hours?"
A.     No. No one has said that I have to finish this or that, but the work, in order to
       finish, it has to be without the elderlies being there; therefore, after work.
Q.      . . . Are the elderlies the customers?
A.     Correct.

*****

Q.     Mr. Chen. ... Did Mr. Yang ever say to you, "I want you to do this work after the
       elderlies leave"?
A.     No.
Q.     Did Mr. Hong ever say to you, I want you to do specific work after the elderlies
       leave?
A.     No.
Q.     Did any of your supervisors ever say to you, I want you to do specific duties after
       the elderlies leave?
A.     No. Chen Exh. 1 p. 18-20.

In addition, Mr. Chen's overtime hours are not reflected on his timesheets from the FRS

(See Exh. 7) and he admittedly never asked to be paid for overtime during his employment at the

Center:

Q.     Were you paid overtime for it?
A.     No.
Q.     Did you ask Mr. Hong, "Listen, I was here all night. Where is my overtime?"
A.     No. *Id.* 63.

*****

Q.     Did you request overtime pay for the time that President Yang allegedly saw you
       after 9:00 in the facility?
A.     No.
Q.     So, you got your check and just said, "Oh, well, no overtime pay for me?"
A.      I never said it before. *Id.* p. 68-69.

Mr. Chen's own testimony is inconclusive. He cannot point to any date that he worked overtime because he did not keep records of his alleged time. Exh. 1 p. 50, 87. In addition, Mr. Chen, Mr. Hong and Mr. Yang also testified that many of the duties that Mr. Chen claimed to be "overtime" were actually tasks completed during his normal business hours. *Id.* p. 42-23, Exh. 4 p. 30, 33, Exh. 5 p. 38-40. This proves that Mr. Chen did not understand the difference between working overtime and performing duties as assigned.

Finally, Mr. Chen's management did not see him working overtime and did not know that he was allegedly working outside his normal working hours:

By Mr. Yang:

> Q.    Was there ever a time when you saw Mr. Chen working past 2:30 p.m.?
> A.    No. Exh. 5 p. 41.

By Mr. Hong:

> Q.    Do you recall situations that Mr. Chen worked past 2:30 p.m.?
> A.    No.
> Q.    Did you have a conversation with Mr. Chen regarding overtime?
> A.    No. He never mentioned it to me. Exh. 4 p. 12.

See also, Exh. 6- ¶¶ 4, 12.

Therefore, Mr. Chen cannot prove an essential element of the Fair Labor and Standards Act: that the Center had knowledge that he was working overtime.

**B.    Mr. Chen has no evidence that he worked overtime during his employment with the Center.**

Section 207(a) (1) of the Fair Labor Standards Act states in pertinent part:

> No employer shall employ any of his employees... for a work week longer than forty (40) hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one half (1 ½ ) the hourly rate at which he is employed.

The United States Supreme Court, in *Anderson v. Mt. Clemens Pottery Company,* 328 U.S. 680, 686-87 (1946) held that "an employee who has brought suit under the Fair Labor

Standards Act for unpaid overtime compensation has a burden of proving that he performed work for which he was not properly compensated." The Court in *Anderson* also held that "[i]n order to recover, an employee must prove that he worked overtime hours without compensation, and he must show the amount and extent of his overtime work as a matter of just and reasonable inference." *Id.* at 680. Therefore, under the Fair Labor Standards Act, Mr. Chen must produce evidence showing that he worked in excess of forty (40) hours per week and show the amount and extent of her overtime work as a matter of just and reasonable inference. In light of the facts of this case, no reasonable juror could find that Mr. Chen worked in excess of forty (40) hours a week.

### 1.  Mr. Chen's timesheets do not show that he worked overtime.

Mr. Chen's timesheets for the one year and three months of his employment only show that he worked less forty than (40) hours each week. Exh. 7.  Mr. Chen also admits that he did not ask to be paid for overtime hours during his employment at the Center. Exh. 1 p. 62-63, 68-69. Further, Mr. Chen timesheets reveal that during most weeks of his employment with the Center, he worked less than forty (40) hours a week. Exh.  7. Therefore, his claim for unpaid overtime hours averaging twenty-two hours of overtime for the first three months of his employment and forty-four hours a week thereafter is outrageous in light of the fact that a majority of his timesheets do not even show he worked forty (40) hours a week. Additionally, when questioned about how much overtime he worked when employed by the Center, Mr. Chen testified that he did not keep any records of his time and he only claimed about ten days of working overtime in the food service position. Exh. 1 p. 62, 87.  This is a far cry from the estimated 2,500 hours that he claims to have worked in his lawsuit. *ECF No.* 3-1¶ 35-36.

Notably, Mr. Chen also testified that he worked as late as 10:00 p.m. at the Center several

nights and claimed that this should have been reflected in his timesheets because he signed out in the FRS. Exh. 1 p. 70. However, the timesheets show that Mr. Chen left the Center at approximately 2:30 p.m. every day and did not do any other work for the Center after that time. Exh. 7. Given that Mr. Chen testified that his FRS timesheets were accurate and he did not notice any errors in them, his overtime claims has no merit. Exh. 1 p. 28, 37.

In a similar case, *White v. Washington Gas,* 2005 U.S. Dist. LEXIS 3461 (D. Md., Mar. 4, 2005) the plaintiff claimed he was owed compensation for hours during which he worked and was not compensated. *Id.* However, like Mr. Chen, those alleged hours were never reported on his timesheets, nor did he ever ask to be paid for those alleged overtime hours during his employment with the Center. *Id.* at 13-14. *See also*, Exh. 7. Upon finding that the plaintiff's only evidence in support of a claim for unpaid overtime compensation was the plaintiff's own testimony that was in contradiction to his timesheets, this Court granted summary judgment in favor of the defendant. *White,* supra. at 13-14. The Court held the plaintiff's evidence only amounted to a scintilla of evidence and therefore summary judgment was appropriate. *Id.* at 14.

In his Amended Complaint, Mr. Chen claims to have worked approximately 2500 hours of overtime until his discharge in or around June 2016, but his timesheets show that he left work as scheduled every day and did not work overtime. *ECF No*. 3-1 ¶¶ 35-37. Exh. 7. In fact, some of his timesheets show he worked less than forty (40) hours a week. Exh. 7 p. 2.  Thus, like the plaintiff in *White,* Mr. Chen's testimony contradicts the time records.  Further, Mr. Chen's deposition testimony also contradicts his Amended Complainant on the number of hours he allegedly worked. He testified that he only worked about 10 days of overtime when he worked in food services. Exh. 1 p. 62. This is substantially fewer hours than the twenty-two hours a week and forty-four hours of overtime his Amended Complainant claims he worked. *ECF No.* 3-1¶¶

35-37.

In support of his claim for overtime, Mr. Chen also submitted a detailed statement of his alleged overtime at the Center to the State of Maryland. Exh. 10. As reflected in the documents, he claimed to be due $45,643.00, which amounts to approximately 2,500 hours of overtime. However, he testified that he did not complete his own wage claim, his son did and he did not keep any records of his alleged overtime work for the Center. Exh. 1 p. 50, 87. He also testified that he cannot read English and his son did not explain some of the information on his own claim. *Id*. p. 90. That he could pinpoint his alleged overtime to the last dollar without any records is not credible. Further, the most compelling evidence that undercuts Mr. Chen overtime claims was his testimony that he considered tasks performed during his *normal business hours* to be "overtime" if the duties performed ere outside his typical duties. Exh. 1 p. 42-43.  Therefore, his overtime claim is questionable, at best.

Finally, Mr. Chen's wage claim also requested approximately $4,500 for paid time off, personal leave and holiday pay. Exh. 10 p. 3.  However, he testified that he did not understand what these items on the claim meant because it was never explained to him. Exh. 1 p. 90.

Therefore, summary judgment should be granted because Mr. Chen's claim form and Amended Complainant are inconsistent with his testimony and his timesheet.

**2.    There are no witnesses with knowledge of Mr. Chen's alleged overtime work.**

During discovery, Mr. Chen provided statements from other employees who he claimed could support his claim that he actually worked more than forty (40) hours in a given week. When questioned further, however, Mr. Chen admitted that his witnesses did not know the actual number of hours he worked and would not be able to testify that he had worked in excess of forty (40) hours:

> Q.      Do you claim that Chen Jimfeng is a witness to you working overtime?
>                                         ****
> A.      Not that Ms. Feng knows how late I work, because she saw me. When they were leaving for home, I was still there working. *How long I worked, they don't know.*
>                                         ****
> A.      *No one knows because they've gone home.* Exh. 1 p. 90-91 (emphasis

added.

Therefore, these individuals would have no knowledge of Mr. Chen working in excess of forty

hours.

Finally, the witnesses that Mr. Chen specifically claimed saw him working overtime,

specifically, Mr. Yang, Mr. Hong and Mr. Wang all testified that Mr. Chen did not work

overtime and they did not see him at the Center after his normal business hours:

By Mr. Yang:

> Q.      Was there ever a time when you saw Mr. Chen working past 2:30 p.m.?
> A.      No. Exh. 5 p. 41.

By Mr. Hong:

> Q.      Do you recall situations that Mr. Chen worked past 2:30 p.m.?
> A.       No.
> Q.       Did you have a conversation with Mr. Chen regarding overtime?
> A.      No. He never mentioned it to me. Exh. 4 p. 12.

*See also*, Exh. 6 at ¶¶ 4, 12 (Wang: I did not see Chen work overtime).

In sum, Mr. Chen produced no witnesses who saw him working overtime. His bare

unsupported claims of overtime are insufficient to survive summary judgment. *White,* 3461

LEXIS, at 13-14 (plaintiff's unsupported affidavit that he worked overtime which was

contradicted by his timesheet was insufficient to forestall summary judgment).

**3.    The type of  work Mr. Chen claimed as overtime, such as, performing Additional tasks outside his normal duties during his scheduled hours were not actually overtime.**

Mr. Chen's testimony indicates that he was confused about the meaning of overtime

because he considered extra tasks completed on behalf of the Center during his normally

schedule working hours as "overtime" and as "devot[ing] more time and efforts" for the Center:

> Q.    Mr. Chen, could you tell me what overtime means to you?
> A.     Our work, our boss's rule is 40 hours per week, and we work six days. Every day, we are paid 6.5 hours.
> Q.    That's overtime, anything over 40 hours a week; is that your testimony?
> A.    *It is not what I said.* Like I said before, the president was saying, whoever devotes more time and efforts for the center, at the end of the year, that person will be rewarded.
> Q.    *Okay. When you say time and effort, Mr. Chen, do you mean doing additional duties during your regular working hours?*
> A.    *Correct.* Exh. 1 p. 42-43. (emphasis added).

As shown, Mr. Chen apparently did not understand that hours worked for the Center

doing various tasks during the normal 40-hour work week are not overtime.

Ultimately, Mr. Chen cannot prove that he worked any overtime hours during the course

of his employment with the Center. His timesheets clearly reflect that he only worked forty

hours a week or less. Further, Mr. Chen has no witnesses who can testify that he worked beyond

forty hours a week. The only evidence he offers is his inconsistent testimony that overtime

included working on handyman tasks during his normal work hours. This evidence does not

support his position that he worked overtime.  Thus, the only evidence he has is his own

testimony, which contradicts the timesheets and the testimony of the three witnesses that he

claimed    saw    him    working    overtime.    Thus,    no    reasonable    jury    could

 find that Mr. Chen worked overtime while employed by the Center.

## IV. Conclusion

Mr. Chen has the burden to prove that he actually worked overtime. He has no records or

witnesses that support his claim for overtime. In fact, the only records in this case show that he

did not work overtime. His timesheets clearly reflect that he worked forty hours or less during

any given week. Further, Mr. Chen cannot prove that the Center had any knowledge of him

working overtime. He did not record his overtime. He did not inform the Center that he was working in excess of forty hours and he did not ask for compensation for overtime worked until after he was discharged. He also incorrectly believed that performing additional duties during his regularly scheduled hours was overtime. Thus, no reasonable jury could find that he worked overtime with the knowledge of the Center and therefore, summary judgment should be granted.

Respectfully submitted,
LAW OFFICE OF JANICE WILLIAMS-JONES

By:     *Janice Williams-Jones //s//*
        Janice Williams-Jones (#25701)
        3545 Ellicott Mills Drive, Suite 308
        Ellicott City, Maryland 21043
        Ph: 410-203-1246
        Fax: 410-203-2301
        Lawofficeofjwjones@gmail.com

## PROOF OF SERVICE

I certify that the foregoing Motion for Summary Judgment and Memorandum in Support was served upon counsel of record via the Court's electronic case filing system as follows:

Edgar Ndjatou
McCree Ndjatou, PLLC
1828 L Street, NW, Suite 600
Washington, DC 20036
endjatou@minlawyerspllc.com

Mathew Hunter
McCree Ndjatou, PLLC
1828 L Street, NW, Suite 600
Washington, DC 20036
mhunter@minlawyerspllc.com

*/s/ Janice Williams-Jones*
Janice Williams-Jones (#25701)